IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

S.T., S.J.P.T., and I.T.,
Plaintiffs,                                    *
                                               *
        v.                                     *          Civil No. JFM-14-00701
                                               *
Howard County Public School System
and Renee A. Foose,                            *
Defendants.                                    *
                                               *
                                               *
                                          ******

## MEMORANDUM

S.T., a seven-year-old[1] autistic child residing in Howard County, by and through his

parents S.J.P.T and I.T., (collectively "plaintiffs") brings suit against Howard County Public

School System ("HCPSS") and Superintendent Renee A. Foose (collectively "defendants"),

seeking review of a decision of a Maryland Administrative Law Judge ("ALJ") rendered on

March 4, 2014, relocating him from a private school in Baltimore County to a public school

within HCPSS.  In a counterclaim, (ECF No. 8), and separate petition, (ECF No. 16), defendants

seek declaratory and injunctive relief, ordering that S.T. be relocated to the HCPSS school

during the pendency of this court's review of the ALJ's findings.  The plaintiffs filed a motion to

dismiss the counterclaim (ECF No. 11) and a response in opposition to defendants' petition (ECF

No. 20).  For the reasons set forth below, the motion to dismiss the counterclaim is granted and

the petition is denied.  For the duration of this court's review, S.T. shall remain at his current

school.

---

[1] S.T. was seven years old as of March 4, 2014 when the ALJ issued her decision—his birthdate
has been removed from the record. (ALJ decision, Findings of Fact, ¶ 1, ECF 15-1).

BACKGROUND

S.T. is diagnosed with autism, a disability that affects his articulation, expressive and receptive language, cognitive and intellectual functioning, social and emotional functioning, fine and sensory motor skills, attention, and concentration.  (ALJ Decision, Findings of Fact, ¶¶ 2-3, ECF No. 15-1).  Given his condition, S.T. is eligible for special-education services in HCPSS, which he receives through an Individualized Educational Program ("IEP").  (*Id.* at ¶¶ 4-5).  S.T. has received IEP services since 2010.  (*Id.* at ¶¶ 1, 5).   His first school placement was at Ilchester Elementary School in the Multiple Intensive Needs Classroom-Early Learning (MINC-EL) in 2011. (*Id.* at ¶ 7).

In November 2012, S.T.'s IEP team determined that he should be placed in a new program because he was not progressing at MINC-EL.  (*Id.* at ¶ 17).  The IEP team referred the placement decision to the HCPSS Central Education Placement Team ("CEPT"), who decided in January 2013 that S.T. should be moved to the Trellis Program at Cedar Lane, a HCPSS school six miles from S.T.'s home.  (*Id.* at ¶ 19).  The Trellis School is a private school in Hunt Valley, Maryland that offers comprehensive services for autistic children.  (*Id.* at ¶ 20).  In 2012–13, the Trellis School operated a program at Cedar Lane through a partnership with HCPSS.  *Id.*  S.T. was enrolled in this program at Cedar Lane on February 5, 2013.  (*Id.* at ¶ 22).

S.T.'s IEP team met in June 2013 to determine his future placement because it was decided that the partnership between the Trellis School and Cedar Lane would not continue in 2013–14.  (*Id.* at¶ 27).  The IEP team rejected placing S.T. in the Cornerstone Program, a HCPSS program at Cedar Lane modeled on the Trellis School's program. *Id.*  Instead, the team placed S.T. at the Trellis School until his October 2013 IEP meeting when placement would be reviewed.  *Id.* S.T. enrolled at the Trellis School in August 2013.  (*Id.* at ¶ 28).

Upon their review in October 2013, members of S.T.'s IEP team determined that the Cornerstone Program was an appropriate placement.  (*Id.* at ¶ 36).  This was not a consensus decision.  (*Id.*).  The Cornerstone Program is similar to the Trellis Program.  Both are accessible, self-contained special education schools that use the ABA/VBA method for autistic students. (*Id.* at ¶¶ 32-33).  The Trellis School is in session twelve months a year.  (*Id.* at ¶ 34).  The Cornerstone Program operates eleven months a year. (*Id.* at ¶ 35).

S.T.'s parents objected to the new placement. (ALJ decision, Background, ECF No. 15-1).  The Individuals with Disabilities Education Act ("IDEA") provides that parents of disabled children have the right to convene an "impartial due process hearing" to resolve complaints regarding their child's IEP. 20 U.S.C. § 1415 (f). On November 26, 2013, S.T.'s parents convened a hearing to challenge the IEP team's decision to transfer S.T. to Cedar Lane and several other procedural issues regarding the change.  On December 18, 2013, the ALJ adjudicating the hearing determined that the Trellis School was S.T.'s "stay put" placement, or where he should remain for the pendency of the hearing.  (ALJ Ruling on Motion, ECF No. 16-1).  S.T. has been enrolled at the Trellis School since the date of the ALJ's decision.

The hearing was held over five days in January and February 2014.  (ECF No. 15-1).  On March 4, 2014, ALJ Shock issued her opinion.  *Id.*  She determined that the Cornerstone Program at Cedar Lane School provides S.T. with the Free Appropriate Public Education ("FAPE") required by the IDEA.  *Id.*

On March 10, 2014, the plaintiffs filed a complaint with this court challenging the ruling pursuant to 20 U.S.C. § 1415 (h)(i)(2)-(3).  (Compl., ECF No. 1).  Defendants filed an answer and a counterclaim. (Answer and Counterclaim, ECF No. 8.)  In their counterclaim, defendants seek declaratory, temporary and permanent injunctive relief from the "stay put" placement at the

Trellis School. *Id.* Plaintiffs filed a motion to dismiss this counterclaim on May 29, 2014.  (ECF No. 11).  On June 23, 2014, defendants filed a response in opposition. (ECF No. 15).  Defendants also filed a separate petition seeking a declaratory judgment and preliminary injunction ordering that the "stay put" location of S.T. during the pendency of these proceedings be the Cornerstone Program at the Cedar Lane School.  (ECF No. 16).  Plaintiffs filed a response in opposition. (ECF No. 20). Defendants then filed a reply to this response. (ECF No. 26). A schedule has established a deadline for filing of simultaneous motions for summary judgment, oppositions, and replies. (ECF No. 27).[2]

## STANDARD

A preliminary injunction is an extraordinary and drastic remedy.  *See Munaf v. Geren,* 553 U.S. 674, 689–90 (2008).  To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council, Inc,* 555 U.S. 7, 20–23 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission,* 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam);  *Germain v. Arnold*, CIV.A. JFM-12-3240, 2013 WL 2635110 (D. Md. June 11, 2013) *aff'd,* 547 F. App'x 353 (4th Cir. 2013).

---

[2] On September 3, 2014, plaintiffs filed a motion to strike portions of defendants' reply. (ECF No. 28). In their motion to strike, plaintiffs argue that the defendants reply to their response contained surreply not permitted under Local Rule 105(2)(a). The portions plaintiff wishes to strike do not bear on the ruling of this court today.

<u>ANALYSIS</u>

**I.      The Court's Authority to Adjudicate S.T.'s "Stay Put" Location**

The IDEA, first passed as the Education of the Handicapped Act, was enacted to "to

ensure that all children with disabilities have available to them a free appropriate public

education that emphasizes special education and related services designed to meet their unique

needs." 20 U.S.C. § 1400 (d)(1)(A). Under the IDEA, all disabled children are given the right to

a FAPE. 20 U.S.C. § 1412.  A FAPE consists of special education and related services that are

provided at the public expense, under public supervision, and without charge, that meet the

standards of the State educational agency, include appropriate preschool, elementary, and

secondary school education, and are provided in conformity with the child's IEP. 20 U.S.C. §

1412 (9).

The IDEA also aims "to ensure that the rights of children with disabilities and parents of

such children are protected."  20 U.S.C. § 1400 (d)(B).  To meet this end, states receiving federal

financial assistance under the Act are required to adopt and abide by a variety of procedural

safeguards.  *See* 20 U.S.C. § 1415; *see also Honig v. Doe*, 484 U.S. 305, 311–12 (1988).

(IDEA's procedural safeguards "guarantee parents both an opportunity for meaningful input into

all decisions affecting their child's education and the right to seek review of any decisions they

think are inappropriate.").

One such procedural safeguard requires that states provide aggrieved parents the

opportunity to convene an "impartial due process hearing" to challenge decisions affecting their

children.  20 U.S.C. § 1415 (f).  In Maryland, those hearings are conducted by an ALJ through

the Office of Administrative Hearings. Md. Code Ann., Educ. §8-413; Md. Regs. Code tit. 13A,

§ 05.01.15(C)(1).  After a decision is issued, the IDEA provides that aggrieved parties may

challenge the findings in a civil proceeding in state or federal court. 20 U.S.C. § 1415 (g).

"Perhaps recognizing that these substantial procedural protections could often take a significant amount of time in which to run their course," Congress included a provision in IDEA to determine a child's placement during the review period. *Wagner v. Bd. of Educ. of Montgomery Cnty.,* 335 F.3d 297, 300 (4th Cir. 2003). The "stay put" rule, or 20 U.S.C § 1415 (j), expressly requires that absent an agreement between the parties, during the pendency of any proceedings challenging a child's IEP, the child "shall remain in the then current educational placement of such child."

Congress' command is "simpl[e] and unequivocal[]." *Wagner,* 335 F.3d at 301. The "stay put" rule "guarantees an injunction that prohibits a school board from removing the child from his or her current placement" during the proceedings. *Id.* Further, the injunction is "automatic" in that the party seeking it is not bound by the usual requirements for such relief. *Id.* "When presented with an application for section 1415 (j) relief a district court should simply determine the child's then current educational placement and enter an order maintaining the child in that placement." *Id.*

This court, therefore, has the power to adjudicate the placement of S.T. during the pendency of its review of the ALJ's findings. Pursuant to 20 U.S.C. § 1415 (j), S.T. shall remain in his current educational placement for the review period. His current educational placement is where he is enrolled at this time, which is the Trellis School in Hunt Valley.[3] This is consistent

---

[3] The defendants argue that the October 2013 IEP, which specified that S.T. should be moved to the Cornerstone Program from the Trellis School, was "tantamount only to a change in location and not a change in educational placement." (Defendants' petition, ECF No. 16 at 8). The defendants contend that, as a result, S.T.'s current "stay put" location is the Cornerstone Program. The defendants do not cite any legal authority to support the proposition that the "stay put" placement is anything other than where the child currently attends school. S.T. is currently enrolled at Trellis School, so that is his "stay put" location. The Administrative Law Judge

with the ALJ's "stay put" determination during the pendency of her own review. (ALJ Ruling on Motion, ECF No. 16-1).

The IDEA provides a limited measure for parties to depart from the automatic "stay put" order of 1415 § (j).  During an IDEA proceeding, a court is permitted to "grant such relief as the court determines is appropriate." 1415 § (i)(2)(C)(iii). The Supreme Court has interpreted this to mean that, in regards to the "stay put" location of a child, "the court has the equitable power to order a change in placement upon a sufficient showing."  *Wagner*, 335 F.3d at 302 (citing *Honig v. Doe,* 484 U.S. 305, 327–28 (1988)).  When a party seeks such a change, however, it is "by no means automatic."  *Id.*  Instead, a party is bound by the traditional standards governing the relief they are seeking.[4]  *Id.*  Thus, the defendant's motion for a preliminary injunction to change S.T.'s location during the remainder of the proceedings in this court will be adjudicated based on the normal requirements for preliminary injunctive relief in this Circuit.[5]

## II.    Defendant's Motion for Preliminary Injunction

A preliminary injunction "temporarily affords an extraordinary remedy prior to trial."

*Copes v. Clem*, CIV.A. JFM-12-441, 2013 WL 1010362 (D. Md. Mar. 13, 2013) *aff'd,* 539 F.

---

reached the same conclusion. (ALJ Ruling on Motion, ECF No. 16-1 at 7)  ("HCPS . . . suggested that the October 21, 2013 IEP calling for placement in the Cornerstone Program at Cedar Lane School is the IEP in effect at this time.  That argument is without merit. The Parents, as part of the IEP team, disagreed with the October 21, 2013 decision and filed this request for hearing.  The stay-put provisions of the law are superfluous if a local educational agency can implement a disputed IEP, including a change of placement, during the proceedings designed to resolve the dispute.").

[4] Plaintiffs argue that this provision is only applicable in a specific context adjudicated by the Fourth Circuit in *Wagner* when the "stay put" placement of the child is unavailable. (ECF No. 20, at  7.)  Nothing in the *Wagner* opinion limited the use of 1415 § (i)(2)(C)(iii) to that particular scenario.  Indeed, the statute states that the court's power to grant "any relief" is applicable to "any action brought." 20 U.S.C. § (i)(2)(C)(iii).

[5] If I rule in favor of defendants on the summary judgment motions and the plaintiffs appeal, other motions will be permitted as to the school where S.T. should be enrolled while the case is on appeal.

App'x 168 (4th Cir. 2013) *cert. denied,* 134 S. Ct. 2728 (U.S. 2014).  Thus to be awarded a

preliminary injunction, a party must establish: a likelihood of success on the merits, a likelihood

that the party will suffer irreparable harm in the absence of preliminary relief, that the balance of

the equities tips in the party's favor, and that an injunction is in the public interest.  *See Winter,*

555 U.S. at 20–23; *Dewhurst v. Century Aluminum Co.,* 649 F.3d 287, 292–93 (4th Cir. 2011).

The proponent must make a clear showing of each element. [6]  *Id.*

     *1.  Likelihood of Success on the Merits*

     Defendants' argument regarding the merits is one of negative implication—they

emphasize the likelihood of the plaintiffs' failure to prove their own likelihood of success.

(Defendants' petition, ECF No. 16 at 7). The defendants contend that because plaintiffs were

unsuccessful at the administrative stage, they are likely to be so again in these proceedings.  *Id.*

The defendants point to the fact that, generally, plaintiffs in IDEA cases "face an uphill battle."

*Id.* (citing *Wagner v. Bd. of Educ. of Montgomery Co.*, 340 F.Supp. 2d 603, 611 (D. Md. 2004)

*reversed on other grounds*, 333 F.3d 297 (4th Cir. 2003).  Defendants also briefly make a factual

argument about the merits.[7]

     In response, the plaintiffs argue that defendants cannot prove a likelihood of success on

the merits simply by pointing out that the law "in general favors the prevailing party at the

---

[6] In their petition for injunctive relief, the defendants incorrectly identify the standard for a
preliminary injunction in this Circuit, and cite a case that was expressly overruled in 2008.
(Defendants' petition, ECF No. 16 at 5–11).  The defendants appear to recognize this error in
their reply. (Defendants' reply, ECF No. 26). This opinion uses the correct standard and applies
the defendants' arguments to it when possible.

[7] The defendants argue that the distinction they draw between location and placement, *see supra*
note 3, affects the merits of the underlying dispute. According to the defendants, because the IEP
change was only one of location, not placement, the two schools are indistinguishable, and thus
the move does not affect S.T.'s receipt of a FAPE. The ALJ ruled on this issue in her final
decision, and her findings of fact and conclusions of law will be reviewed at the summary
judgment stage.

administrative level."  (Plaintiffs' response in opposition, ECF No. 20 at 13).  The plaintiffs

contend that they, rather than the defendants, will have success on the merits.  Plaintiffs' central

arguments are that the IDEA was violated because they were deprived of an opportunity to

meaningfully participate in the IEP process that resulted in the decision to relocate S.T. to Cedar

Lane, and that Cedar Lane cannot effectively implement S.T.'s IEP.  *Id.* at 13–14.

Plaintiffs in IDEA cases do face a series of obstacles.  Plaintiffs challenging IEPs

determined by a school system have the burden of proof at the administrative level, *Weast v.*

*Schaffer ex. rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004), and when seeking judicial review of

the administrative decision. *Barnett v. Fairfax Co. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991),

*cert. denied*, 502 U.S. 859 (1991). In the judicial proceeding, the level of review is "modified de

novo." *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.,* 303 F.3d 523, 530 (4th Cir. 2002).  This

means that the appropriateness of an IEP is a factual question that the court must determine by a

preponderance of the evidence.  *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va*.,

516 F.3d 254, 259 (4th Cir. 2008). In making this determination, however, the court must give

"due weight" to the state administrative proceedings.  *Board of Educ. v. Rowley,* 458 U.S. 176,

102 S.Ct. 3034 (1982).  Findings of fact made in administrative proceedings are thus entitled to a

"presumption of correctness, so long as the findings were regularly made." *County Sch. Bd. v.*

*Z.P.,* 399 F.3d 298, 305 (4th Cir. 2005).  "The court is not . . . to 'substitute [its] own notions of

sound educational policy for those of local school authorities.'" *MM ex rel. DM*, 393 F.3d at 531

(citing *Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 999 (4th Cir. 1997)).

Given the general difficulty plaintiffs challenging an IEP face, the defendants have

satisfied the requirement of likelihood of success on the merits.  The ALJ determined that the

school system's decision to implement the IEP at Cornerstone Program was appropriate.  The

9

defendants have made a showing that IEPs reviewed at the administrative level generally stand upon judicial review.  Therefore, the defendants may well have satisfied this element.

    *2.  Irreparable Injury*

    The defendants' argument regarding irreparable injury is financial.  According to the defendants, it costs on average $8,246.40 per month for S.T. to attend the Trellis School in Hunt Valley.  (Defendants' petition, ECF No. 16 at 6).  Additionally, the defendants concede that if they are eventually successful, they will not be able to recoup the amount already paid for S.T.'s education. *Id.; see Town of Burlington v. Dep't of Educ.,* 736 F.2d 773, 800–01 (1st Cir.1984) ("*Burlington II* "), *aff'd,* 471 U.S. 359 (1985). Plaintiffs argue that defendants are insufficiently specific.  Plaintiffs suggest that defendants are required to explain precisely how much more the Trellis School costs the school system in contrast to the Cornerstone Program. (Plaintiffs' response in opposition, ECF No. 20 at 14–15).

    In adjudicating this prong, "[t]he key word . . . is *irreparabl*e. Mere injuries, however substantial, in terms of money, time and energy . . .  are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . .  weighs heavily against a claim of irreparable harm." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (citing *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953 (1974)).

    Although not precise, defendants have indicated a financial harm. They have also indicated that it is irreparable, in that it cannot be mitigated, even in the event that defendants are later successful on the merits.  Therefore, the defendants have satisfied this element.

3. *Balance of Equities*

A court must balance the equities in order to determine if preliminary injunctive relief is appropriate.  Defendants claim that S.T. will suffer "no harm" if he were to be moved to the Cornerstone Program.  (Defendants' petition, ECF No. 16 at 6).  Their argument is based on the determination that the ALJ made, in which she found that Cornerstone Program would provide S.T. with a FAPE as required by law. (ALJ Decision, ECF No. 15-1.) The defendants also argue that, as stated above, they will suffer irreparable harm if they are required to continue to fund S.T.'s education at the Trellis School. (Defendants petition, ECF No. 16 at 6).  According to the defendants, then, because they are the only party suffering harm, the equities tip in their favor. *Id.*

Plaintiffs are challenging the ruling of the ALJ.  Thus, they disagree that placement at Cornerstone Program will provide S.T. with the necessary FAPE and contend that a move to the Cornerstone Program will not provide S.T. with an adequate education.  (Plaintiffs' response in opposition, ECF No. 20 at 15).  They also argue that moving S.T. from the Trellis School will cause "additional loss of education benefit."  *Id.* This will result from the transition S.T. will have to make from the Trellis School to the Cornerstone Program, and the disruption such a move will cause to his progress.  *Id.* at 15–16.

The balance of the equities tips in favor of the plaintiffs.  S.T. is currently seven years old, and he has attended three different schools since his formal education began.  (ALJ Decision, Findings of Fact, ¶¶ 1,7, 19, 27–28, ECF No. 15-1).  Autistic children, including S.T., frequently have difficulty with transitions. (ALJ Decision, ECF No. 15 at 33–35).  The ALJ determination that Cornerstone Program provides S.T. with a FAPE has not yet been reviewed on the merits. If this court were to issue a preliminary injunction ordering S.T. to attend

Cornerstone Program, and later found the ALJ's determination erroneous, S.T. would be forced

to attend an inappropriate school for a substantial period of time, and transition at least twice.

This burden is more serious than the financial cost imposed on the defendants. Although this

alone is sufficient to deny the preliminary injunction, out of an abundance of caution, this court

will consider the last prong of the test.

    *4. Public Policy*

       The defendants again make a financial argument, this time to prove public policy is on

their side. The defendants' central point is that the public interest is not served by "unnecessarily

prolonging a student's placement in a private school at the taxpayer's expense." (Defendants

petition, ECF No. 16 at 10–11). Plaintiffs argue that the public policy promoted by IDEA—

preserving the status quo by maintaining the child in his current educational placement during

the pendency of any challenge—should take precedence. (Plaintiffs' response in opposition,

ECF No. 20 at 16).

       Public policy weighs strongly against relocating S.T. during the pendency of these

proceedings. As noted above, the IDEA expressly provides that children "shall remain" in their

current educational placement during administrative and judicial review. 20 U.S.C§ 1415 (j).

Congress' command regarding the "stay put" provision is understood to be "simpl[e] and

unequivocal[]." *Wagner*, 335 F.3d at 301. Courts should be "extremely cautious" in awarding

injunctive relief "given the statute's strong presumption . . . in favor of the status quo." *Id.* at

300–01. This may be appropriate in situations where the current educational placement of a

child becomes unavailable during the pendency of proceedings, *see Wagner*, 335 F.3d 297, or

when continuing to keep the child in a placement is dangerous to the child or others. *See Honig*,

484 U.S. 305 at 328 (holding that the "stay put" provision "effectively creates a presumption in

favor of the child's current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself.").  The defendants' claim regarding financial injury is outweighed by the potentially severe risk facing S.T..  The public policy embraced by the statute is undermined if the placement can be changed during judicial review for cost-saving measures.

<u>CONCLUSION</u>

For the aforementioned reasons, plaintiffs' motion to dismiss defendants' counterclaim is granted and defendants' motion for injunctive relief is denied. A separate order follows.

_____09/25/2014_____              _____/s/_____
Date                                      J. Frederick Motz
                                          United States District Judge