IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| S.T. ex rel. S.J.P.T. and I.T., | * | |
| | * | |
| v. | * | Civil No. JFM-14-00701 |
| | * | |
| HOWARD COUNTY PUBLIC | * | |
| SCHOOL SYSTEM, et al. | * | |

\*\*\*\*\*\*

## MEMORANDUM

Plaintiffs S.J.P.T. and I.T., parents of S.T., bring this lawsuit against the Howard County Public School System ("HCPSS") and Superintendent Renee A. Foose, (collectively "defendants"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Defendants seek to transfer S.T. to the Cornerstone Program at the Cedar Lane School ("Cornerstone"), while plaintiffs oppose moving S.T. from his current placement at the Trellis School. After a five-day administrative hearing in which plaintiffs alleged several procedural and substantive IDEA violations committed by defendants, Administrative Law Judge Mary Shock of the Maryland State Office of Administrative Hearings ruled in favor of defendants. Plaintiffs then appealed that decision to this court under Md. Code Ann., Educ. § 8-413(j).

The parties have filed cross-motions for summary judgment. The issues have been fully briefed, and no hearing is necessary. See Local Rule 105.6. For the following reasons, the court grants defendants' motion for summary judgment and denies plaintiffs' cross-motion for summary judgment.

**BACKGROUND**

S.T. is diagnosed with autism, a disability that affects several aspects of his cognitive, intellectual, social, and emotional functioning.  (ALJ Decision, ECF No. 15-1 ¶¶ 2–3).  Given his condition, S.T. qualifies as disabled under the IDEA and is eligible for special-education services, which he receives through an Individualized Educational Program ("IEP").  (*Id.* ¶¶ 4–5).  S.T. has received IEP services since 2010.  (*Id.* ¶¶ 1, 5).  His first school placement was at Ilchester Elementary School in the Multiple Intensive Needs Classroom-Early Learning (MINC-EL) in 2011.  (*Id.* ¶ 7).

In November 2012, S.T.'s IEP team decided to transfer him because he was not progressing at MINC-EL.  (*Id.* ¶ 17).  The IEP team referred the placement decision to the HCPSS Central Education Placement Team ("CEPT"), who decided in January 2013 to transfer S.T. to the Trellis Program at Cedar Lane School.  The Trellis School, a private institution, operated a satellite program at Cedar Lane, a public HCPSS school, in 2012–13.  (*Id.* ¶¶ 19–20). S.T. was enrolled in that program on February 5, 2013.  (*Id.* ¶ 22).

When informed that the Trellis Program would not continue at Cedar Lane, S.T.'s IEP team met in June 2013 to determine his future placement.  (*Id.* ¶ 27).  The IEP team initially rejected placing S.T. in the Cornerstone Program, a HCPSS program at Cedar Lane modeled on the Trellis School's program.  *Id.*  Instead, the team placed S.T. at the private Trellis School in Hunt Valley, located over 20 miles from Cedar Lane, until a October 2013 IEP meeting when his placement would be reviewed.  *Id.*  S.T. enrolled at the Trellis School in August 2013.  (*Id.* ¶ 28).

Upon their review in October 2013, members of S.T.'s IEP team decided that the Cornerstone Program was indeed an appropriate placement, although that determination was not unanimous.  (*Id.* at ¶ 36).  The Cornerstone Program is similar to the Trellis Program: both are

accessible, self-contained special education schools that use the ABA/VBA method for autistic students. (*Id.* at ¶¶ 32-33). The Trellis School is in session twelve months a year, however, while the Cornerstone Program's duration is eleven months. (*Id.* at ¶¶ 34–35). The parties dispute this fact, but Shannon Majoros, a HCPSS Autism Specialist, testified during the administrative hearing that the Cornerstone Program "is now an eleven-month program running five weeks during the summer." (ECF No. 15-1 at p. 37).

S.T.'s parents objected to the new placement. The IDEA provides parents of disabled children the right to convene an "impartial due process hearing" to resolve complaints regarding their child's IEP. 20 U.S.C. § 1415 (f). On November 26, 2013, S.T.'s parents filed a Due Process Complaint to challenge the IEP team's decision to transfer S.T. to Cedar Lane and several other procedural issues regarding the change. The hearing was held over five days in January and February 2014. (ECF No. 15-1). On March 4, 2014, ALJ Shock issued her decision. *Id.* In addition to 39 factual findings, ALJ Shock determined that the Cornerstone Program at Cedar Lane School provides S.T. with the Free Appropriate Public Education ("FAPE") required by the IDEA. *Id.*

On March 10, 2014, the plaintiffs filed a complaint with this court challenging the ruling pursuant to 20 U.S.C. § 1415 (h)(i)(2)-(3). (Compl., ECF No. 1). Defendants filed a counterclaim (ECF No. 8) and a motion for a declaratory judgment and preliminary injunction (ECF No. 16), seeking to transfer S.T. to the Cornerstone Program pending the outcome of this dispute. I denied defendants' request for a preliminary injunction and granted plaintiffs' motion to dismiss defendants' counterclaim on September 25, 2014. (ECF No. 31). Both sides then filed cross-motions for summary judgment on October 10, 2014. (ECF Nos. 32, 33).

**STANDARD**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the court must look at the facts and inferences drawn from there in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When reviewing an administrative decision under the IDEA, district courts must make an "independent decision[ ] based on a preponderance of the evidence." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205 (1982) (internal quotation marks omitted). The court must give "due weight" to the ALJ's determinations, however, and not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Id.* at 206.  In an IDEA case, if a district court chooses not to follow regularly made administrative findings that are considered *prima facie* correct under *Rowley*, the court must explain why.  *Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1000–01 (4th Cir. 1997); *see also Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991).

To determine whether administrative findings are regularly made and entitled to deference under *Rowley's* "due weight" standard, the court should consider the methods the ALJ employed in making the decision below.  *Doyle*, 953 F.2d at 105.  Under this standard, a court should give deference even to a poorly explained administrative decision as long as the hearing officer used standard fact-finding methods.  *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover*

4

*Cnty.*, 516 F.3d 254, 262 (4th Cir. 2008).  Moreover, when the parties are disputing the relative

credibility and persuasiveness of witnesses, courts may not freely disregard an ALJ's

determination on those issues without explaining the basis for the contrary result.  *Cnty. Sch. Bd.*

*of Henrico County, Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 306–07 (4th Cir. 2005).

In an IDEA action the burden of proving that a state hearing officer's decision was

erroneous rests with the party challenging the decision.  *Barnett v. Fairfax Cnty. Sch. Bd.*, 927

F.2d 146, 152 (4th Cir. 1991).  In the present case, because plaintiffs challenge ALJ Shock's

decision, they bear the burden of proof to overcome the *prima facie* correctness of her ruling.

## ANALYSIS

Although plaintiffs' complaint alleges several IDEA violations, the parties' cross-motions

for summary judgment focus on one issue: whether the Cornerstone Program can implement

S.T.'s IEP and provide him with a FAPE.  ALJ Shock decided that it could, and ruled in favor of

defendants.  Defendants argue that the ALJ decision was "regularly made" and should be given

deference, while plaintiffs argue that ALJ Shock committed various errors of law.[1]  Defendants

are correct, and their motion for summary judgment is granted.

## I.    ALJ Shock's Decision is *Prima Facie* Correct and Deserves "Due Weight."

ALJ Shock made numerous findings of fact and conclusions that she reached after a five-

day hearing.  During that hearing, she judged the credibility of numerous witnesses who were

cross-examined by both defendants and plaintiffs.  To determine whether her conclusions were

---

[1] Defendants also argue that plaintiffs failed to raise the issue of whether the Cornerstone
Program can implement S.T.'s IEP before ALJ Shock, and are therefore barred from arguing it
here.  (ECF NO. 38 at p. 3).  I think that plaintiffs did sufficiently argue this issue before ALJ
Shock, as evidenced by her decision's reference to the parents' contention "that in order to
receive a FAPE, the Student must be enrolled in a twelve-month program, like the Trellis
program."  (ECF No. 15-1 at p. 26).

"regularly made" and should be given deference, I will examine her methodology and "the process through which the findings were made." *See J.P. ex rel. Peterson*, 516 F.3d at 259.

On the issue of Cornerstone's ability to implement S.T.'s IEP, defendants put forward the testimony of three witnesses: Shannon Majoros, a HCPSS autism specialist; Ashley Grant, a Special Education Teacher at HCPSS who taught S.T. before he transferred to the Trellis School; and Janet Zimmerman, a HCPSS Instructional Facilitator.  (ECF No. 15-1 at pp. 19–21). Majoros testified that the Cornerstone Program is "now" an eleven-month program with five weeks scheduled during the summer, and also that "all the program components to implement" S.T.'s IEP "are in place," including staff training in the Verbal Behavioral Analysis ("VBA") method.  (*Id.* at p. 37).  Grant testified to the same, describing Cornerstone's support staff and their logistical capability to implement S.T.'s IEP.  (*Id.* at p. 36).  Finally, Zimmerman testified that "bridge services" may be available during the summer to lengthen Cornerstone's 41 week duration to match the Trellis Program's 46-week duration.

In response, plaintiffs put forward the testimony of: Josselyn Ensor, Education Director of the Trellis Program; Macarena Fernandez, a Board Certified Behavioral Analyst; and Sara Beth Shoff, S.T.'s therapist at Trellis.  Overall, and in contrast to defendants' witnesses, ALJ Shock found the "testimony of the Parents' witnesses too general," and not specifically tailored to the needs of S.T. and the capabilities of Cornerstone.  (ECF No. 15-1 at pp. 29, 31).

Fernandez testified that based on her observation of the Cornerstone Program, it did not effectively utilize the VBA method, which had worked well for S.T. at the Trellis School.  (*Id.* at p. 36).  As ALJ Shock noted, however, Fernandez only observed instruction at Cornerstone for one hour, and Fernandez did not know whether the student–instructor interactions she observed

involved IEPs that required VBA.  (*Id.* at p. 37).  She could not testify to whether Cornerstone would be able to implement S.T.'s IEP.

Ensor testified to the impact that a longer summer break would have on S.T.  The Trellis Program runs for 46 weeks, and the longest break throughout the year is only two weeks.  (*Id.* at p. 28).  In contrast, Cornerstone's duration is shorter (absent potential bridge services), and would likely have longer breaks, especially during the summer.  *Id.*  Ensor testified that this longer break would negatively affect S.T.'s educational progress, and also testified that unless all of S.T.'s goals were addressed during the summer, he would be unable to maintain his skills and educational progress.  ALJ Shock did not give great weight to Ensor's testimony either, however, because ALJ Shock questioned whether Ensor possessed the requisite experience and first-hand knowledge of S.T.'s unique circumstances.  (ECF No. 15-1 at p. 30).  The majority of her duties at Trellis are administrative, and she never directly taught or evaluated S.T.  *Id.*

Shoff, who worked with S.T. for four months, also testified that S.T.'s progress (specifically in Speech Language therapy) would suffer from an extended break in the summer if Cornerstone were unable to replicate the length of services provided by Trellis.  (*Id.* at p. 28).  ALJ Shock found her testimony more persuasive than the others, in part because she had worked with S.T. for four months, but ultimately determined that her testimony was also too general and did not specifically address disadvantages of Cornerstone that would inhibit its ability to implement S.T.'s IEP.

Based on the expert testimony and the deficiencies in plaintiffs' experts' testimony as it relates to Cornerstone's ability to implement S.T.'s IEP, ALJ Shock found that: (1) Cornerstone could equal Trellis's 46-week program by tacking on "bridge services," and (2) based on that and the testimony of defendants' witnesses, there is no evidence that Cornerstone will fail to

"implement the IEP as written." (*Id.* at p. 38). Accordingly, ALJ Shock concluded that defendants could cease reimbursing plaintiffs' for S.T.'s schooling at Trellis and transfer him to the Cornerstone Program at Cedar Lane.

## II.   Plaintiffs Have not Justified Reversing ALJ Shock's Decision.

ALJ Shock's decision is *prima facie* correct and entitled to "due weight" absent evidence of legal or factual errors that tainted her methodology. Plaintiffs challenge ALJ Shock's decision that the Cornerstone Program can implement S.T.'s IEP plan, arguing that it does not deserve "due weight" for three related reasons: (1) misapplication of controlling law to the facts of the case, (2) basing her decision on improper testimony, and (3) incorrectly placing the burden of proof on plaintiffs. None of these reasons are sufficient to reverse the decision below.

First, plaintiffs argue that defendants' witnesses are not entitled to automatic deference. They are correct, in that an ALJ may find the testimony of school officials less credible than witnesses proffered by a student or student's parents. *See Cnty. Sch. Bd. of Henrico Cnty., Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 306–07 (4th Cir. 2005) (holding that evidence cited by School Board was "not of the nature or quality that would *require* the [ALJ] to accept it over that of the parents' witnesses"). That argument is irrelevant in this case, however, because ALJ Shock carefully weighed the credibility and persuasiveness of all witnesses and explained her justifications for finding defendants' witnesses more credible. ALJ Shock did not defer to defendants simply because of who they were, she ruled in their favor because of their testimony.

Second, plaintiffs argue that ALJ Shock "improperly considered and relied on the testimony of" Majoros and Zimmerman regarding the Cornerstone Program's duration and possibility of bridge services, because their testimony constituted improper "retrospective evidence." (ECF No. 33-1 at p. 21). Issues with retrospective evidence, however, go to the

adequacy of an IEP under the IDEA.  An IEP should be judged on the facts known to all parties

at the time an IEP is created, and whether it is "reasonably calculated to enable the child to

receive educational benefits."  *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 477 (4th Cir.

2009) (citing *Rowley*, 458 U.S. at 207).  Here, the dispute is not over S.T.'s IEP, but whether

Cornerstone can sufficiently implement it.  Were plaintiffs' argument as I understand it to be

true, it would prohibit transferring a student to any new educational programs that were not in

existence when the IEP was created.  Here, Majoros and Zimmerman testified to what

Cornerstone is currently capable of, having lengthened its program and engaged in continued

training of its teachers.  Such testimony is not improper "retrospective evidence."[2]

Finally, plaintiffs argue that ALJ Shock improperly placed a burden on them at the

administrative hearing.  Plaintiffs claim that "controlling case law" prohibits placing a burden on

parents to prospectively show that their child's proposed placement will not satisfy his IEP or

provide him with a FAPE.  (ECF No. 33-1 at p. 24).  ALJ Shock did not improperly place a

burden on plaintiffs.  Defendants determined that the Cornerstone Program could implement

S.T.'s IEP, and informed plaintiffs that they would no longer be reimbursed for tuition at the

Trellis School.  When plaintiffs contested that decision, the only burden they had was to

convince ALJ Shock that defendants were wrong.  After hearing testimony and judging

credibility, ALJ Shock accepted the testimony of defendants' witnesses, namely Majoros and

Zimmerman, that the Cornerstone Program can implement S.T.'s IEP.

---

[2] If plaintiffs are arguing that defendants committed procedural violations of the IDEA by offering different testimony on how long the Cornerstone Program would run (when the October 2013 IEP was adopted, the Cornerstone Program had a duration of 36 weeks/10 months, but Majoros testified at the hearing that Cornerstone ran 41 weeks/11 months), that allegation is subject to a harmlessness analysis.  Procedural violations of the IDEA are not actionable absent evidence of actual harm to the student by failing to provide a FAPE, and plaintiffs have not cited evidence of actual harm to S.T.'s education.  *See, e.g.*, *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 534 (4th Cir. 2002).

In conclusion, I find that ALJ Shock's credibility determinations, which serve as the foundation for her findings of fact and conclusions regarding the ability of the Cornerstone Program to implement S.T.'s IEP, are sound.  Plaintiffs have not demonstrated any failures in her methodology that would warrant reversing her decision.  Her findings of fact indicate that Cornerstone will provide S.T. with the FAPE he is entitled to.  Accordingly, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.


_____01/05/2015_____                    _____/s/_____
Date                                                              J. Frederick Motz
                                                                     United States District Judge